IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In the Matter of: | ) | Case No. BK20-81186 |
| | ) | |
| GREGORY LEONARD GURBACKI, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| MARJORIE MOSS, | ) | Adv. Pro. 21-8001 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY LEONARD GURBACKI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the motion to dismiss plaintiff's amended complaint. (Doc. #9; Doc. #12). Andrew Wurdeman appeared for plaintiff Marjorie Moss. Kathryn J. Derr appeared for the defendant / debtor Gregory Gurbacki. For the reasons stated herein, debtor's motion is granted.

**Findings of Fact**

Debtor Gregory Gurbacki filed for Chapter 7 bankruptcy protection on September 28, 2020. (Doc. #1 ¶ 7). The deadline to object to Debtor's discharge was January 5, 2021. Plaintiff filed her complaint that day. (Doc. #1; BK20-81186 - Doc. #1; Doc. #21). According to the complaint and the attachments thereto:

1. Debtor and Chris Hallgren purchased Associated Underwriters, Inc. ("AU") in December 2007. Debtor bought out Hallgren in 2010. (Doc. #1, second ¶ 1; second ¶ 2; and Ex. A at 2).

2. Plaintiff was terminated from AU on February 3, 2009. In 2011 plaintiff sued AU for "employment discrimination." On June 22, 2015 she obtained a judgment. (*Id.* at second ¶ 2; and Ex. A at 1-2).

3. AU went out of business after debtor sold its assets for $400,000 in December 2015. Debtor owned other entities which he used to "manipulate funds" to avoid satisfying plaintiff's judgment. (*Id.* at second ¶ 3). Neither the "funds" nor the acts constituting

   manipulation are identified. The $400,000 in sale proceeds were paid to Security State Bank, which held a lien against all of AU's assets, which assets secured $4.2 million in debt AU owed the bank. (Ex. A at 4).

4. On October 27, 2016, plaintiff filed suit to pierce the corporate veil of AU and hold debtor personally liable regarding the employment claim. On March 20, 2019, plaintiff obtained a judgment against debtor, which the Nebraska Court of Appeals affirmed. (Doc. #1, second ¶¶ 4-5; ¶ 6). The March 2019 judgment and the decision of the Court of Appeals affirming it are attached to the complaint. The state courts found plaintiff established debtor "exercised such control to commit a fraud or other wrong in contravention of the plaintiff's rights" because at the relevant times, AU was grossly undercapitalized and insolvent; debtor diverted corporate funds for improper uses; and debtor disregarded the corporate entity, using AU as a facade for personal dealings. (Ex. A; Ex. B - *Moss v. Associated Underwriters, Inc.*, 948 N.W.2d 273, 282-83 (Neb. App. 2020)).

5. Debtor filed for bankruptcy protection after plaintiff attempted to execute against debtor's personal assets. (Doc. #1, ¶ 7).

6. Plaintiff sought relief pursuant to 11 U.S.C. § 523(a)(2). Debtor knowingly and intentionally made material, fraudulent representations as to the "nature and extent of [his] assets" to avoid paying plaintiff's judgment. The "misrepresentations are the basis for" debtor's request for discharge. Under the circumstances, Plaintiff will be unfairly prejudiced if debtor's obligations were discharged "based upon the fraudulent misrepresentations and fraudulent actions of Defendant". (*Id.*, ¶¶ 10-12). The representations are not specified.

7. Plaintiff also sought relief pursuant to 11 U.S.C. § 523(a)(6). Plaintiff restated the foregoing allegations, adding debtor purposefully injured plaintiff "in the form of having Defendant's obligations to the Plaintiff as a judgment debtor discharged in bankruptcy when Defendant is aware that he has sufficient assets to satisfy the Plaintiff's judgment." Debtor's fraudulent representations "were done with the intent to avoid the Defendant's satisfaction of the Plaintiff's judgment or to deprive Plaintiff of the ability to execute upon the Judgment and collect payment of the same." (¶¶ 16-18).[1]

Debtor filed a motion to dismiss the complaint for failure to state a claim (Doc. #5). On January 14, 2021, plaintiff filed an amended complaint, which contained the foregoing allegations, copies of the jury instructions and verdict form from her employment

---

[1] According to the caption of plaintiff's complaint she sought relief pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6). (Doc. #1). The reference to § 523(a)(4) appears to be a typographical error as the body of the complaint does not contain an allegation of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny".

lawsuit, and new facts. (Doc. #7). According to the amended complaint and the attachments thereto:

1. In her original lawsuit, plaintiff asserted claims against AU for age discrimination and retaliation. (Doc. #7, ¶¶ 7-8).

2. Debtor and Chris Hallgren were employed by AU as insurance agents. They both purchased AU in August 2007. Debtor became its President and Hallgren its Vice President. In August 2008, Hallgren met with plaintiff. He requested plaintiff withdraw from AU's health insurance plan and obtain Medicare or Medicaid. Plaintiff refused. Plaintiff was placed on 90-day probationary status. On January 28, 2009, plaintiff requested Dan Grasso[2] remove her from probationary status. Mr. Grasso complied the next day. On February 3, 2009, "Grasso made the decision to terminate [plaintiff's] employment." (Ex. A, Jury Instruction No. 4, ¶¶ 2-5).

3. The jury rejected plaintiff's age discrimination claim but awarded damages for the retaliation claim. The jury found AU acted willfully. (Doc. #7, ¶¶ 7-8). The jury instructions provide retaliation was willful "if it has been proved that, when the Defendant discharged the Plaintiff, the Defendant knew the discharge was in violation of the federal law prohibiting retaliation or acted with reckless disregard of that law." (Ex. A, Jury Instruction No. 12).

4. Plaintiff now seeks relief pursuant to 11 U.S.C. § 523(a)(6) because debtor deliberately and intentionally violated plaintiff's legal rights by firing her in retaliation for engaging in legally protected activity. "This conduct was targeted specifically at Plaintiff and was sure to cause her harm as a result of losing her employment." The jury's finding of willfulness "brings Debtor's debt to Plaintiff within the purview of 11 U.S.C. § 523(a)(6)." Because a court of equity disregarded AU's corporate identity, AU's retaliation was the act of the debtor. (Doc. #7, ¶¶ 17-19).

5. Plaintiff, for the first time, seeks relief pursuant to 11 U.S.C. § 727(a)(5). Debtor is diverting income to his spouse through C-Tek Insurance Agency, Inc., which debtor controls. Debtor has not accounted for the "drastic change in income" in his schedules and his 2018 tax returns, a second house titled in his wife's name, unspecified personal property, and membership interests in EFGroup ATL, LLC and OmaStings, LLC, which he owned in 2018. (*Id.*, ¶ 22-26).

---

[2] Mr. Grasso's status with AU is not specified.

**Conclusions of Law**

*Willful and Malicious Injury § 523(a)(6)*

Debtor asserts that plaintiff's claims are time-barred. The deadline to file a complaint objecting to discharge or to dischargeability of a particular debt is sixty days after the date first set for the meeting of creditors. *See* Fed. R. Bankr. P. 4004(a) (providing deadline as to claims under 11 U.S.C. § 727); Fed. R. Bankr. P. 4007(c) (providing deadline as to claims under 11 U.S.C. § 523). "These rules are analogous to statutes of limitations and are strictly construed." *KBHS Broad. Co. v. Sanders (In re Bozeman)*, 226 B.R. 627, 630 (B.A.P. 8th Cir. 1998).

> The purpose for requiring creditors to file objections to discharge or complaints to determine dischargeability within sixty days of the meeting of creditors is to further the "fresh start" goals of bankruptcy relief by requiring creditors to promptly join their exceptions to discharge of debt so a petitioning debtor will enjoy finality and certainty and relief from financial distress as quickly as possible.

*Matter of Podwinski*, No. BK19-41937-TLS, 2021 WL 371769, at *7 (Bankr. D. Neb. Feb. 2, 2021) (citing *Industrial Fin. Corp. v. Falk (In re Falk)*, 96 B.R. 901, 905 (Bankr. D. Minn. 1989) (citation omitted)). The deadline to file a complaint was January 5, 2021. Plaintiff filed her amended compliant on January 14, 2021.

Plaintiff asserts that her complaint is timely because it relates back to the original complaint, which was timely filed. *See* Fed. R. Bankr. P. 7015 (making Fed. R. Civ. P. 15 applicable to adversary proceedings). Under Federal Rule 15 an amended pleading relates back to the original pleading when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). For a claim to arise out of the same conduct, transaction, or occurrence it must be "tied to a common core of operative facts." *Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010).

In analyzing relation back, the court must balance the strict construction of Bankruptcy Rules 4004 and 4007 against the lenient standard allowing litigants to amend pleadings. *See In re Bozeman*, 226 B.R. at 630-31.

> The right to file amended complaints, however, is not unqualified. At some point, a deadline for discovering unknown or overlooked claims must be set. If not, parties are free to bring entirely new causes of action without consideration for time limits. "Rule 15(c) does not permit lawyers to endlessly answer the question: How many causes of action can you find in this fact situation?" Defendants should not have to guess which claims plaintiffs will ultimately attempt to prove.

*Id. at* 631 (citing *Marsman v. Western Electric Co.*, 719 F. Supp. 1128, 1143 (D. Mass. 1988)).

Plaintiff's complaint and amended complaint assert an exception to discharge under 11 U.S.C. § 523(a)(6).[3] The section excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Plaintiff originally alleged debtor misrepresented his assets and debtor knew his fraudulent representations would injure plaintiff because he would obtain a discharge when he had assets to pay the judgment. The original claims are based upon a fraudulent representation of assets, which are not covered by § 523(a)(6). Plaintiff's original complaint failed to state a claim under § 523(a)(6) upon which relief could be granted.

Claims within an amended complaint will only relate back if they arise out of the "same set of facts" as the original claims. The facts in the original complaint "must be specific enough to put the opposing party on notice of the factual basis for the claim." *Taylor v. United States*, 792 F.3d 865, 869 (8th Cir. 2015) (citations omitted); *see also Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1283 (8th Cir. 1988) (finding insufficient notice of additional third-party transactions set forth in an amended complaint because they were not pled along with the enumerated transactions in the original complaint).

Plaintiff's amended complaint is not based upon the same set of operative facts. The original operative facts involve fraudulent representations regarding debtor's assets. The original facts were not specific enough to notify debtor the objection was based upon causing a willful and malicious injury through retaliation for engaging in protected employment activity. Although Plaintiff's complaint references her termination and that she obtained a judgment for "employment discrimination," the original objection to discharge was not based upon the termination, discrimination, or retaliation. Merely referencing the termination and debt is insufficient. Such a broad interpretation runs afoul of the strict interpretation of Rules 4004 and 4007. *See, e.g., Magno v. Rigsby (In re Magno)*, 216 B.R. 34, 40 (B.A.P. 9th Cir. 1997) (holding although "the fact of the debt itself was the same, a liberal amendment policy that would not require a plaintiff to plead any facts except to mention the words 'claim' and 'discharge' would eviscerate the pleading requirements. The purpose of notice pleading is to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'") (citation omitted).

In addition, even if the amended complaint related back to the original, the debt is not excepted from discharge as a matter of law because the amended complaint establishes

---

[3] Unlike Plaintiff's original complaint, Plaintiff's amended complaint does not contain a claim under 11 U.S.C. § 523(a)(4) for debts obtained by false pretenses, false representation, or actual fraud.

debtor did not terminate plaintiff. To be excepted from discharge, the willful and malicious injury must have been committed "by the debtor." 11 U.S.C. § 523(a)(6). Plaintiff was employed by AU, a Nebraska corporation. In her discrimination case plaintiff stipulated that in August 2008, Chris Hallgren, another owner of AU, requested Plaintiff withdraw from AU's health policy. After Plaintiff refused, she was placed on probationary status. Plaintiff stipulated that on February 3, 2009, "*Dan Grasso made the decision to terminate [plaintiff's] employment.*"[4]

Plaintiff asserts because she successfully pierced the corporate veil of AU and debtor was held to be the alter ego of AU, the termination was the act of the debtor. Debtor contends that he cannot be vicariously liable for a willful and malicious injury under § 523(a)(6). Plaintiff counters that her judgment was based upon an alter ego theory, not vicarious liability. Veil piercing and alter ego are separate but related concepts. "'Efforts to pierce the corporate veil ask a court to hold A vicariously liable for B's debt.' By contrast, 'a contention that A is B's "alter ego" asserts that A and B are *the same entity*; liability then is not vicarious but direct.'" *International Union v. Aguirre*, 410 F.3d 297, 302 (6th Cir. 2005) (citing *Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000)).

Even though the judgment was based upon an alter ego theory, it does not bring the debt within 11 U.S.C. § 523(a)(6). "[T]he willful and malicious conduct of others, even if the debtor may be legally responsible for that conduct under state law, cannot be imputed to the debtor for purposes of Section 523(a)(6)." *Greer v. Bruce (In re Bruce)*, 593 B.R. 765, 777 (Bankr. S.D. Ohio 2018). This is the case even when debtor is liable on an alter ego theory. *See Armstrong v. Oslin (In re Oslin)*, 584 B.R. 363, 373 (Bankr. N.D. Okla. 2018) (finding act of employee could not be imputed to debtor for purposes of § 523(a)(6) even though the state court held debtor liable as alter ego of his corporation); *Estate of Hamilton v. Nolan (In re Nolan)*, 220 B.R. 727, 731–32 (Bankr. D.D.C. 1998) (holding "[i]mputed liability is insufficient" under § 523(a)(6) because "a judgment based on actions for which the debtor may be legally responsible but which were not performed by the debtor is outside the scope of both the language and intent of the statute.") (citations omitted).

Cases of imputed liability appear to be limited to fraud. The Eighth Circuit Court of Appeals has held that in certain cases fraud may be imputed under 11 U.S.C. § 523(a)(2). Specifically:

> If the creditor proves a partnership between two of its debtors, non-dischargeability may be imputed from one partner to the other. Under our

---

[4] The jury verdict that retaliation was willful is also not preclusive. The jury instructions provide that retaliation is "willful" if "Defendant knew the discharge was in violation of the federal law prohibiting retaliation *or acted with reckless disregard* of that law." Doc. #7, Ex. A at 11 (emphasis added). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998).

> precedent, imputation only is proper if the otherwise innocent debtor knew or should have known of his partner's *fraud*.

*Treadwell v. Glenstone Lodge, Inc. (In re Treadwell)*, 637 F.3d 855, 860 (8th Cir. 2011) (emphasis added) (citations omitted). Plaintiff's claims are not based upon fraud. They are based upon a willful and malicious injury. Unlike exceptions to discharge under § 523(a)(2), § 523(a)(6) requires the act causing the willful and malicious injury be performed "by the debtor". It cannot be imputed. *See Davis v. Melcher (In re Melcher)*, 319 B.R. 761, 777 (Bankr. D.D.C. 2004) ("In contrast to § 523(a)(2)(A), an injury done by a debtor's agent, and not by the debtor, but imputed to a debtor under nonbankruptcy law, fails to satisfy § 523(a)(6) because the injury must be 'by the debtor'."). Plaintiff stipulated Mr. Grasso decided to terminate plaintiff. Mr. Grasso's act, even on behalf of AU, was not "by the debtor" and cannot be imputed to debtor.

In addition, the facts pled indicate that AU was not debtor's alter ego in February 2009 when Plaintiff was terminated. Plaintiff was terminated in February 2009, when AU was owned by two people. Debtor and Chris Hallgren purchased AU in late 2007. Debtor bought out Hallgren's interest in 2010.[5] Likewise, all grounds to pierce the corporate veil occurred years after the injury. The state courts found AU to be undercapitalized and insolvent in 2015. Debtor used corporate funds for personal benefit sometime after 2014 and for personal expenses in 2018.

Plaintiff's new claim for willful and malicious injury resulting from her termination does not relate back. Further leave to amend is not granted because Debtor's original complaint does not plausibly set forth a willful and malicious injury covered by § 523(a)(6). Any further amended claim would not relate back to the original complaint.

*Failure to Explain Dissipation of Assets § 727(a)(5)*

Plaintiff's amended complaint contains a claim for relief under 11 U.S.C. § 727(a)(5), which was not pled in the original complaint. Debtor asserts that a claim under § 727 can never relate back if the original claim is filed only under § 523 because the claims are inherently different.

> There are substantial differences between proceedings under § 523(a) and proceedings under § 727(a), as to the necessary factual basis of the claims, the allegations which must be pleaded, the type, measure, and burdens of proof involved, and the ultimate effect of judgment in a plaintiff's favor on the availability of bankruptcy relief to the debtor. In commencing a dischargeability proceeding under § 523(a), a creditor seeks to vindicate only its own debt. On the other hand, in joining an objection to discharge under § 727(a), a private creditor assumes something of the role of a trustee. Section 727(a) is directed toward protecting the integrity of the bankruptcy system by denying discharge to

---

[5] The court of appeals decision indicates that debtor became the sole shareholder of AU in 2011. It is not clear which year is correct.

- 7 -

> debtors who engaged in objectionable conduct that is of a magnitude and effect broader and more pervasive than a fraud on, or injury to, a single creditor. Because exceptions to discharge and objections to discharge are two completely distinct and radically-different causes of action, proceedings involving them are in essence separate lawsuits even though they may be pleaded jointly in the same complaint. As essentially separate lawsuits, each such proceeding must be brought within the statute of limitations prescribed by Bankr. R. 4004(a) and 4007(c).

*Austin Farm Center, Inc. v. Harrison (In re Harrison)*, 71 B.R. 457, 459 (Bankr. D. Minn. 1987) (citations and footnote omitted); *see also First Nat. Bank in Okeene v. Barnes*, 956 F.2d 277 at *2 (10th Cir. 1992) ("[A]n exception to discharge under § 523(a)(6) would not relate back to the original complaint's claim for objection to discharge under § 727(a)(5)").[6]

While there is caselaw to support debtor's position, Rule 15 does not expressly go as far as debtor suggests. Bankruptcy courts have allowed plaintiffs to amend to include a previously unpled claim under § 727 when the complaint only contained a claim under § 523. *See Winters v. Brothers (In re Brothers)*, 345 B.R. 406, 409 (Bankr. S.D. Fla. 2006) (listing cases). However, as the court in *In re Brothers* noted, "In each instance the court focused on whether the pleading, as amended, 'arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading.'" *Id.*

Plaintiff's § 727(a)(5) claim does not arise out of conduct, a transaction or an occurrence set forth in the original complaint. As such, it does not relate back. Pursuant to § 727(a)(5), debtor shall deny the debtor a discharge if "debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). To state a claim for relief under § 727(a)(5), a plaintiff must identify the specific assets plaintiff contends were lost or deficient. *See Ehle v. Brien (In re Brien)*, 208 B.R. 255, 258 (B.A.P. 1st Cir. 1997) (affirming dismissal of complaint where plaintiff did not allege specific assets or how the assets disappeared); *see also The Arkansas Bank v. Burrow (In re Burrow)*, 131 B.R. 113, 115 (Bankr. E.D. Ark. 1991) ("With no more information or facts than those set out in this Complaint, Plaintiff would have virtually unfettered ability to present the broadest range of evidence. Under the circumstances, the Court finds that the debtor would not be fairly apprised of the claims against him.").

Plaintiff's original complaint does not contain any allegation that debtor dissipated any specific asset. The amended complaint states a claim under § 727(a)(5), but only because Plaintiff pled new facts and allegations, including that debtor diverted income to his

---

[6] Plaintiff suggests these cases are distinguishable because they typically involve motions to amend. This distinction, however, does not appear to be meaningful. The proper analysis is under Rule 15.

spouse, and that he did not account for a second house and membership interests in three entities he owned three years before he filed. These new facts are not tied to a common core of operative facts in the original complaint to justify relation back. Because Plaintiff's original compliant does not contain any claim under § 727(a)(5) or any facts to support such a claim, leave to amend is not granted.

IT IS THEREFORE ORDERED that debtor's motion to dismiss plaintiff's amended complaint (Doc. #5) is granted. Further leave to amend is not granted as it would be futile.

  Dated: March 30, 2021

            BY THE COURT:

            /s/ Brian S. Kruse
            Brian S. Kruse
            United States Bankruptcy Judge

Notice given by the court to:
*Kathryn J. Derr
Andrew D. Wurdeman
John P. Weis

Movant (*) is responsible for giving notice to other parties if required by rule or statute.